## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **MELIKA MOHAMMADI GAZVAR OLYA,** | § § § | |
| *Petitioner*, | § § | |
| v. | § § | |
| **ANGEL GARITE,** *Assistant Field Office Director, El Paso Field Office, El Paso Service Processing Center*; **MARY DE ANDA-YBARRA,** *Field Officer Director, El Paso Field Office, ICE*; **TODD LYONS,** *Acting Director, ICE*; **KRISTI NOEM,** *Secretary of Homeland Security*; and **PAMELA BONDI**, *United States Attorney General*, | § § § § § § § § § § § § | **EP-25-CV-00083-DCG** |
| *Respondents*. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Petitioner Melika Mohammadi Gazvar Olya ("Petitioner" or "Ms. Olya") seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241, contending that her detention pursuant to a final order of removal violates the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment. Respondents Angel Garite, Mary De Anda-Ybarra, Todd Lyons, Kristi Noem, and Pamela Bondi ("Respondents" or "the Government") oppose the Petition.

For the following reasons, the Court **GRANTS** the Petition, **ORDERS** Respondents to either **REMOVE** or **RELEASE** Ms. Olya no later than November 14, 2025, and **DENIES** all other Motions.

I.      **Background**

A.      **Removal Proceedings**

The following facts are undisputed unless otherwise noted. Ms. Olya is an Iranian citizen who has been detained by U.S. Immigration and Customs Enforcement ("ICE") for two years and seven months.[1] In Iran, Ms. Olya publicly protested compulsory hijab policies, the "morality police," and state violence against female activists.[2] After receiving death threats from Iranian officials, Ms. Olya fled her home and sought asylum in the United States.[3] She crossed the Rio Grande River on January 29, 2023, and surrendered herself to Border Patrol ("BP").[4] Ms. Olya was arrested and convicted of Improper Entry by an Alien,[5] then placed into ICE custody on February 23, 2023.[6] Ms. Olya has remained in ICE custody at the El Paso Service Processing Center ("EPSPC") since that date.[7]

On March 11, 2023, a United States Citizenship and Immigration Services ("USCIS") officer interviewed Ms. Olya and found that she "did, in fact, have a credible fear of returning to

---

[1] Pet., ECF No. 1, at 3, 4.

All page citations in this Order refer to the page numbers assigned by the Court's CM/ECF system, rather than the internal pagination of the cited document.

[2] *Id.*

[3] *Id.* at 4.

[4] *Id.*; *see also* Mot. Dismiss, ECF No. 9, at 2 (stating the same).

[5] *See* 8 U.S.C. § 1325; *see also United States v. Melika Mohammadi Gazvar Olya*, No. 3:23-mj-00340 (W.D. Tex. Feb. 22, 2023).

[6] *See* Mot. Dismiss at 2 ("On February 23, 2023, ICE El Paso accepted custody of Petitioner and detained her at the El Paso Processing Center"); *see also* Pet. at 4 (stating that Ms. Olya was sentenced to "time served plus one business day" on February 22, 2023, then transferred immediately into ICE custody).

[7] *See* Mot. Dismiss at 2; *see also* Pet. at 3–4 (describing detention timeline).

Iran."[8] Ms. Olya applied *pro se* for asylum, withholding of removal, and protection under the United Nations Convention Against Torture.[9] On July 20, 2023, the Immigration Judge ("IJ") denied Ms. Olya's requests for relief and ordered that she be removed to Iran.[10] Because Ms. Olya did not appeal the ruling, her removal order became administratively final on August 21, 2023.[11]

ICE Enforcement and Removal Operations ("ERO") attempted to remove Ms. Olya within the ninety-day period following her final order of removal.[12] On October 1, 2023, ICE agents transported Ms. Olya to the airport where she was scheduled to board an aircraft destined for Iran.[13] She "refused to board"[14] and was eventually taken back to EPSPC.[15] One year later, on September

---

[8] Mot. Dismiss at 2.

[9] Pet. at 4.

[10] *Id.*

[11] *See* 8 C.F.R. § 1003.38(b) ("The Notice of Appeal from a Decision of an Immigration Judge (Form EOIR–26) shall be filed directly with the Board of Immigration Appeals within *30 calendar days* after the stating of an immigration judge's oral decision or the mailing or electronic notification of an immigration judge's written decision." (emphasis added)).

*See also id.* ("If the final date for filing falls on a Saturday, Sunday, or legal holiday, this appeal time shall be extended to the next business day.").

*See also* Mot. Dismiss at 6 ("There is no dispute that Petitioner's removal order has been final since August 2023.").

[12] *See infra* notes 37–44 (discussing import of ninety-day detention period); *see also infra* notes 53–56 and accompanying text (discussing how removal order becomes final).

[13] Mot. Dismiss at 2; *see also ICE Air Operations*, United States Immigration and Customs Enforcement (Aug. 8, 2023), https://www.ice.gov/factsheets/ice-air-operations (describing role of chartered aircrafts in removal process).

[14] Gov't's Decl., ECF No. 19-1, at 2.

[15] The Government maintains that despite being "warned verbally and in writing of the consequences of failing to depart the United States under a final removal order," Ms. Olya refused to board. *See* Gov't's Decl. at 4. By contrast, Ms. Olya describes weeping and telling agents that she feared for her life in Iran, then being driven back to EPSPC. *See* Pet. at 5.

16, 2024, ICE attempted a second removal.[16] Ms. Olya "again refused to board her removal flight" and was returned to EPSPC.[17]

Since then, ERO has attempted to coordinate additional flights to remove Ms. Olya and other Iranians. These efforts were postponed by technological mishaps,[18] bureaucratic delay,[19] frayed diplomatic relations between the United States and Iran,[20] and other unspecified "logistical issues."[21] The next removal flight is chartered for "early October 2025."[22] As a contingency plan, "ERO is in the planning stages of scheduling a second charter flight for late October to transport

---

[16] Gov't's Suppl. Br., ECF No. 15, at 2.

[17] Mot. Dismiss at 3.

Ms. Olya maintains that "the officers told her that she had the option to reject her flight." *See* Pet. at 7. Respondents deny this. *See* Gov't's Suppl. Br. at 2.

[18] Respondents partially attribute Ms. Olya's prolonged detention to her requests for a stay of removal before the Board of Immigration Appeals. *See* Mot. Dismiss at 8 ("While challenging the legality of her removal order was well within her rights, such challenges necessarily prolonged her detention."). One prescheduled removal flight *was* canceled during the pendency of Ms. Olya's appeal, but Respondents acknowledge that technological issues on their end were to blame. *Id.* at 7 n.1.

[19] On April 2, 2025, Respondents told the Court that "[r]emoval to Iran is imminent upon the issuance of a TD [travel document] to Mohammadi, which remains pending. ERO does not anticipate any impediments to the TD issuance." Mot. Dismiss at 9.

[20] On July 21, 2025, Respondents updated the Court: "Despite recent escalations between the United States and Iran, the likelihood of Petitioner's removal in the reasonably foreseeable future has only strengthened." Gov't's Suppl. Br. at 1.

[21] On August 21, 2025, Respondents told the Court that "[i]n August 2025, there is a charter flight scheduled with up to one hundred (100) Iranian citizens manifested." Gov't's Decl. at 2.

On September 19, 2025, Respondents told the Court that "[t]he charter flight scheduled for August 2025 to effectuate the removal of up to one hundred (100) Iranian citizens had to be postponed to a later date due to logistical issues, which have since been resolved." Gov't's Advisory, ECF No. 23-1, at 2. Petitioners contend that "Ms. Olya could not have been on that flight anyway because Respondents did not have a travel document for her then." Pet'r's Resp., ECF No. 24, at 1.

[22] Gov't's Advisory at 2.

any Iranians that are unable to board this first flight."[23] As far as the Court is aware, Ms. Olya currently remains in ICE custody.

### B.    Habeas Proceedings

On March 13, 2025, Ms. Olya filed a "Petition for Writ of Habeas Corpus" (ECF No. 1) under 28 U.S.C. § 2241.[24] Ms. Olya challenges her post-removal-order detention under the Immigration and Nationality Act ("INA") and the Due Process Clause of the Fifth Amendment.[25] She contends that her detention has become "indefinite" and therefore violates the "reasonable time limitation" set forth by the Supreme Court in *Zadvydas v. Davis*.[26] Ms. Olya seeks immediate supervised release pending future removal proceedings.[27]

Respondents oppose the Petition and relief requested therein. On April 2, 2025, the Government filed a "Motion to Dismiss, or in the Alternative, Motion for Summary Judgment" (ECF No. 9). The Court heard oral arguments in connection with the Petition and Motions on August 21, 2025,[28] and requested status updates as it took the arguments under advisement.[29]

---

[23] *Id.* at 3.

[24] *See generally* Pet.

[25] *Id.* at 2.

[26] *See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (holding that the INA limits noncitizens' detention to "a period reasonably necessary to bring about that alien's removal from the United States"); *see also Clark v. Martinez*, 543 U.S. 371, 386 (2005) (holding that *Zadvydas* applies to inadmissible aliens).

[27] Pet. at 14.

[28] Sched. Order, ECF No. 17.

[29] Advis. Order, ECF No. 22.

## II.    Legal Standard

The Rules Governing § 2254 Cases ("Habeas Rules"), which a court may apply to § 2241 cases,[30] authorize courts to apply the Federal Rules of Civil Procedure ("FRCP") to the extent they do not conflict with the Habeas Rules.[31] Courts have taken different positions on whether FRCP 12 and 56 are inconsistent with the Habeas Rules (and, by extension, whether the usual standards governing Motions to Dismiss and Motions for Summary Judgment apply to § 2241 cases).[32] The Court need not dive into that morass, because under either legal standard, Ms. Olya has proved that she is entitled to habeas relief for the reasons set forth below.

## III.    Discussion

### A.    Immigration and Nationality Act

The Immigration and Nationality Act ("INA") provides, *inter alia*, for the "detention and removal of aliens ordered removed."[33] These guidelines are codified in 8 U.S.C. § 1231, and they

---

[30] *See* Rules Governing Section 2254 Cases ("Habeas Rules"), Rule 1(a) ("These rules govern a petition for a writ of habeas corpus filed in a United States district court under 28 U.S.C. § 2254"); *see also* Habeas Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)").

*See also, e.g.*, *Hernandez v. Witte*, No. 1:20-CV-1680, 2020 WL 7647548, at *1 n.1 (W.D. La. Dec. 23, 2020) ("Under Rule 1(b), the Rules Governing § 2254 Cases also apply to § 2241 habeas cases.").

[31] *See* Habeas Rule 12 ("The Federal Rules of Civil Procedure, to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.").

[32] *See, e.g.*, *Browder v. Director, Dep't of Corrs. of Ill.*, 434 U.S. 257, 269 n.14 (1978) ("The custodian's response to a habeas corpus petition is not like a motion to dismiss"); *see also Ndudzi v. Castro*, No. SA-20-CV-0492, 2020 WL 3317107, at *10 (W.D. Tex. June 18, 2020) (finding "that use of Rule 12(b)(6) in this habeas context is inconsistent with the habeas rules"); *id.* ("Rule 56 applies only to the extent that it does not conflict with the habeas rules") (internal quotation marks omitted); *see also Ukawabutu v. Morton*, 997 F. Supp. 605, 608 (D.N.J. 1998) (recognizing that the distinctions between the FRCP and Habeas Rules cause "considerable confusion").

[33] *See* Immigration and Nationality Act of 1959 § 241, 8 U.S.C. § 1231.

dictate the deadline to effect removal,[34] the beginning of the removal period,[35] and circumstances under which the removal timeline will be extended.[36]

      Section 1231 directs the Attorney General to effect removal within a ninety-day period.[37] The removal period commences when (1) "the order of removal becomes administratively final,"[38] (2) "a court orders a stay of the removal of the alien,"[39] or (3) "the alien is released from detention or confinement,"[40] whichever occurs latest.[41] The ninety-day deadline "shall be extended,"[42] however, if "the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure *or* conspires or acts to prevent the alien's removal subject to an order of removal."[43] Upon the expiration of the removal period, "the alien, pending removal, shall be subject to supervision" with reasonable restrictions.[44]

---

[34] 8 U.S.C. § 1231(a)(1)(A).

[35] *Id.* § 1231(a)(1)(B).

[36] *Id.* § 1231(a)(1)(C).

[37] *Id.* § 1231(a)(1)(A).

[38] *Id.* § 1231(a)(1)(B)(i).

[39] *Id.* § 1231(a)(1)(B)(ii).

[40] *Id.* § 1231(a)(1)(B)(iii).

[41] *Id.* § 1231(a)(1)(B).

[42] *Id.* § 1231(a)(1)(C) (emphasis added).

[43] *Id.* (emphasis added).

[44] *Id.* § 1231(a)(3).

B.    **Fifth Amendment Due Process Clause**

i.    ***"Reasonable Time" Limitation***

Though the INA authorizes an extension of the ninety-day removal timeline, it is silent on whether detention could be extended *ad infinitum*.[45] Troubled that indefinite post-removal-period detention "would raise serious constitutional concerns," the United States Supreme Court "construed the statute [in *Zadvydas v. Davis*] to contain an implicit 'reasonable time' limitation, the application of which is subject to federal-court review."[46]

The *Zadvydas* Court surmised that a bright-line rule would be necessary to satisfy "the Nation's need to speak with one voice on immigration"[47] and determined that post-removal detention lasting up to *six months* was presumptively reasonable.[48] After that period has elapsed, and "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,"[49] the burden shifts to the Government to "respond with evidence sufficient to rebut that showing."[50] Whether removal is foreseeable is a relative inquiry, rather than a fixed one: "[A]s the period of prior postremoval confinement grows, what

---

[45] *See Zadvydas*, 533 U.S. at 682 ("In these cases, we must decide whether this post-removal-period statute authorizes the Attorney General to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal.") (emphasis in original).

[46] *Id.*

[47] *See id.* at 701.

[48] *Id.* ("We do have reason to believe, however, that Congress previously doubted the constitutionality of detention for more than six months.").

[49] *Id.*

[50] *Id.*

counts as the 'reasonably foreseeable future' conversely would have to shrink."[51] The remedy for exceeding that period is release from custody.[52]

Ms. Olya has been subject to a final removal order for more than six months. Her removal order became administratively final more than two years ago on August 21, 2023.[53] Although the Board of Immigration Appeals ("BIA") later ordered a stay of removal, which ended on May 30, 2024,[54] this had no apparent effect on the calculation of the removal period. A removal period will only be reset *after* a stay "[i]f the removal order is *judicially* reviewed and if a *court* orders a stay of the removal of the alien."[55] The plain text of the provision indicates that it does not apply to administrative agencies such as the BIA, and other provisions of the INA are careful to distinguish between "judicial" and "administrative" review.[56] But the Court need not reach that interpretive question. Even if the Court were to find that Ms. Olya's removal period began on May 30, 2024, it has still exceeded the presumptively constitutional six-month timeline dictated by *Zadvydas*.

---

[51] *Id.*

[52] *Id.* at 699–700 ("Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions.").

[53] *See supra* note 11 and accompanying text.

[54] Pet'r's Resp., ECF No. 11, at 8–9.

[55] 8 U.S.C. § 1231(a)(1)(B)(ii) (emphases added).

[56] *See* 8 U.S.C. § 1229c(f) (describing "stay" ordered by "court"); *cf. id.* § 1227(d)(1) (describing "administrative" stay); *id.* § 1227(d)(2) (clarifying that denial of "administrative stay" does not preclude application for "stay of removal").

Ms. Olya may therefore obtain habeas relief if she can show that there is "no significant likelihood of removal in the reasonably foreseeable future."[57] The longer she remains in post-removal-order detention, however, the more "the 'reasonably foreseeable future' conversely would have to shrink."[58] To support her claim that Respondents are unlikely to remove her from the country within the reasonably foreseeable future, she cites Respondents' prior failed attempts at removal, each of which was outside of her control:[59]

(1)    <u>April 2, 2025</u>: "Removal to Iran is imminent upon the issuance of a TD [travel document] to Mohammadi, which remains pending. ERO does not anticipate any impediments to the TD issuance."[60]

(2)    <u>July 21, 2025</u>: "Despite recent escalations between the United States and Iran, the likelihood of Petitioner's removal in the reasonably foreseeable future has only strengthened."[61]

(3)    <u>August 21, 2025</u>: "In August 2025, there is a charter flight scheduled with up to one hundred (100) Iranian citizens manifested."[62]

(4)    <u>September 19, 2025</u>: "The charter flight scheduled for August 2025 to effectuate the removal of up to one hundred (100) Iranian citizens had to be postponed to a later date due to logistical issues, which have since been resolved."[63]

---

[57] *Zadvydas*, 533 U.S. at 701.

[58] *Id.*; *see also Seretse-Khama v. Ashcroft*, 215 F. Supp. 2d 37, 48 (D.D.C. 2002) (concluding that "removal must be truly imminent" to justify continued detention in such cases).

[59] *See* Pet'r's Br., ECF No. 24, at 2.

[60] Mot. Dismiss at 9.

[61] Gov't's Suppl. Br. at 1.

[62] Gov't's Decl. at 2.

[63] Pet'r's Resp. at 1.

Ms. Olya argues that Respondents strain credulity with their most recent reference to "logistical issues." As she observes, "[she] could not have been on that flight anyway because Respondents did not have a travel document for her then."[64]

Respondents maintain that removal is on the horizon. They now promise that Ms. Olya will be removed in "early October 2025."[65] If not then, they suggest that there may be another flight in "late October"[66] if Ms. Olya refuses to board the earlier one or "if the charter flight encounters logistical issues again that require it to be rescheduled."[67] Regardless, the Court has no way of ascertaining the status of either flight, because "ICE declines to publicly disclose the date of this rescheduled charter flight or any specific details about the flight until after the mission has been completed."[68]

Respondents are undoubtedly navigating a tangled web involving several agencies and nations, and delays are inevitable. But *Zadvydas* disavows the premise that detention can endure "as long as good faith efforts to effectuate deportation continue."[69] After all, "this standard would seem to require an alien seeking release to show the absence of *any* prospect of removal—no matter how unlikely or unforeseeable—which demands more than [the Supreme Court's] reading

---

[64] Pet'r's Br. at 1 (citing Gov't's Advisory at 2 ("The Iranian Interests Section interviewed Mohammadi on September 8, 2025.").

[65] Gov't's Advisory at 2.

[66] *Id.* (stating ERO was in the "planning stages of scheduling a second charter flight").

[67] ECF No. 23-1, at 3.

[68] *Id.* at 2.

[69] *See Zadvydas*, 533 U.S. at 702 (citation modified).

of the statute can bear."[70] In light of Ms. Olya's protracted detention, the litany of rescheduled removal flights, and scant information to guide the Court, Ms. Olya has satisfactorily shown that removal is no longer reasonably foreseeable beyond one month from the date of this Order.

    ii.    ***Equitable Tolling Due to Noncompliance***

If the six-month period has expired and the petitioner shows that no removal is reasonably foreseeable, the government can still meet its burden by showing that the detainee has acted to stall or frustrate the otherwise imminent removal process.[71] Section 1231(a)(1)(C) permits extended detention if the alien:

(1)    "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure," *or*

(2)    "conspires or acts to prevent the alien's removal subject to an order of removal."[72]

If the government makes an adequate showing, "the six-month period should be equitably tolled until petitioner begins to cooperate with the INS in effecting his deportation or his obstruction no longer prevents the INS from bringing that about."[73] Because the six-month period is tolled from the most recent date of compliance, the Court addresses Respondents' arguments in reverse chronological order.

---

[70] *Id.* (emphasis in original).

[71] *See* 8 U.S.C. § 1231(a)(1)(C).

[72] *See id.*; *see also Glushchenko v. United States Dep't Homeland Sec.*, 566 F. Supp. 3d 693, 709 (W.D. Tex. 2021).

[73] *See Balogun v. I.N.S.*, 9 F.3d 347, 351 (5th Cir. 1993) (holding that equitable tolling is appropriate only if the petitioner has been offered the opportunity to provide rebuttal evidence).

First, Respondents contend that Ms. Olya hampered the issuance of her travel document. On July 4, 2025, the Iranian Interest Section ("IIS") requested that Ms. Olya be photographed in a "headscarf" for her travel document.[74] On July 8, 2025, Ms. Olya refused, "indicating that the request was against her beliefs and was the reason she left Iran."[75] However, her objection did not "deprive the government of documents necessary to effectuate a departure from the United States"[76] or otherwise thwart her own removal. To the contrary, IIS agreed to issue the travel document with a photograph Ms. Olya provided prior to its July 4th request,[77] and Respondents remain confident that IIS will issue the travel document imminently.[78] The six-month period should not, therefore, be tolled from July 8, 2025.

Second, Respondents maintain that Ms. Olya "refused to board"[79] removal flights on October 1, 2023, and September 16, 2024. The parties dispute the underlying facts, but these can be momentarily set aside. Assuming that Respondents demonstrated noncompliance under § 1231(a)(1)(C), which this Court does *not* decide, equitable tolling would extend the six-month period from September 16, 2024, to March 16, 2025. This period would have therefore expired nearly six months ago, and Respondents have not provided sufficient evidence of noncompliance since that time.[80] Further, to the extent Ms. Olya still does not *wish* to be removed, reluctance

---

[74] Suppl. Decl., ECF No. 15-1, at 2.

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*; *see also* Advisory at 2.

[79] Gov't's Decl. at 2.

[80] *See supra* notes 74–78 and accompanying text.

alone cannot support continued detention.[81] The Court therefore finds that Ms. Olya's detention

cannot be justified on the basis of noncompliance under 8 U.S.C. § 1231(a)(1)(C).

## IV.    Conclusion

For the foregoing reasons, the Court **GRANTS** Petitioner Melika Mohammadi Gazvar

Olya's "Petition for Writ of Habeas Corpus" (ECF No. 1).

The Court **DENIES** Respondents' "Motion to Dismiss" (ECF No. 9).

The Court **DENIES** "Petitioner's Opposed Motion to Strike Portions of Assistant Field

Office Director Martin A. Sarellano Jr.'s Declaration" as **MOOT** because the Court has not

based its rulings on anything in that Declaration.

Finally, the Court **ORDERS** Respondents to either:

(1)      **REMOVE** Petitioner Olya from the United States; or

(2)      **RELEASE** her from physical custody subject to **SUPERVISION**[82]

**NO LATER THAN NOVEMBER 14, 2025**.

**So ORDERED and SIGNED this 14th day of October 2025.**

_____
**DAVID C. GUADERRAMA**
**SENIOR U.S. DISTRICT JUDGE**

---

[81] *Seretse-Khama*, 215 F. Supp. 2d at 53.

[82] *See* 8 U.S.C. § 1231(a)(3) (requiring, as is relevant, that the alien "appear before an immigration officer periodically for identification," "give information under oath about the alien's nationality, circumstances, habits, associations, and activities, and other information the Attorney General considers appropriate," and "obey reasonable written restrictions on the alien's conduct or activities that the Attorney General prescribes for the alien.").

- 14 -